IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FRED E. W.,                              §
                                         §
                Plaintiff,               §
                                         §
V.                                       §          No. 3:17-cv-3277-B-BN
                                         §
NANCY A. BERRYHILL,                      §
Acting Commissioner of Social Security,  §
                                         §
                Defendant.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Fred E. W. seeks judicial review of a final adverse decision of the
Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons
explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that he is disabled as a result of bipolar disorder. *See*
Administrative Record [Dkt. No. 11] ("Tr.") at 288. Plaintiff previously filed an
application for a period of disability and disability insurance benefits as well an
application for supplemental security income. *See id*. at 10. These claims were initially
denied and denied again on reconsideration. *See id*. Plaintiff requested a hearing before
an administrative law judge ("ALJ"), and the hearing was held on October 30, 2012.
*See id*. at 24. At the time of the hearing, Plaintiff was a 54-year-old man with a GED
diploma. *See id*. at 14. Plaintiff has not engaged in substantial gainful activity since
May 2, 2010. *See id*. at 12.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or supplemental security income benefits. *See id.* at 19. Although the medical evidence established that Plaintiff suffered from major depressive disorder, bipolar disorder, cannabis abuse, cocaine abuse, and alcohol abuse, the ALJ concluded that the severity of that those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 13. The ALJ further determined that Plaintiff had the residual functional capacity to perform work with some limitations but could not return to his past relevant employment as an equipment mechanic, automobile mechanic, and small engine mechanic. *See id.* at 17. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a hospital cleaner (DOT 323.687-010), a job that exists in significant numbers in the national economy. Given his age, education, and exertional capacity for work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 19.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed. *See id.* at 1-3.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision, asserting that it is not supported by substantial evidence and is subject to reversible error. More particularly, Plaintiff argues that the ALJ (1) denied Plaintiff the opportunity to subpoena or cross-examine the author of an ambiguous Mental Residual Functioning Assessment ("MRFCA"); (2) failed to explain the weight he gave to the MRFCA or how he resolved inherent ambiguities in the MRCFA; and (3) committed a violation under *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), by

2

independently deciding the limiting effects of Plaintiff's disorder without the support of a medical opinion.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm

only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the

claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

5

that he could and would have adduced evidence that might have altered the result."
*Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff raises three issues on appeal in his initial opening brief: whether the ALJ (1) denied Plaintiff the opportunity to subpoena or cross-examine the author of an ambiguous Mental Residual Functioning Assessment ("MRFCA"); (2) failed to explain the weight he gave to the MRFCA, or how he resolved inherent ambiguities in the MRCFA; and (3) committed a violation under *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), by independently deciding the limiting effects of Plaintiff's disorder without the support of a medical opinion. *See* Dkt. 18 at 3. The undersigned only needs to address the third issue because reversal is clearly warranted on that ground alone.

Plaintiff argues that, when the ALJ independently decided the limiting effects of Plaintiff's disorder without the support of a medical opinion, the ALJ acted in opposition to established Fifth Circuit law in *Ripley*.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC refers to the most that a claimant is able to do despite his physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ considers the RFC, along with the claimant's age, education, and work experience, in determining whether a claimant can work. *See id.* §§ 404.1520(a)(4), 416.920(a)(4).

"Generally, an ALJ should request a medical source statement that describes the types of work a claimant can still perform." *Ripley*, 67 F.3d at 557. But the absence of such a statement is not reversible error if the ALJ's decision is nevertheless supported by substantial evidence. *See id.* Reversal is warranted only if the claimant shows that she was prejudiced. *See id.*

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *See id.* The Court of Appeals noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem but did not clearly establish the effect that condition had on his ability to work. *See id.* The Fifth Circuit, therefore, remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on is ability to work. *See id.* at 557-58. The Fifth Circuit panel rejected the Commissioner's argument that the medical evidence substantially supported the ALJ's conclusion because the Court of Appeals was unable to determine the effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

Here, the following relevant reports were available to the ALJ:

- Dr. Anne Smith (July 15, 2011): Dr. Smith undertook a psychological exam of Plaintiff and diagnosed him with "major depressive disorder" and a current Global Assessment of Function ("GAF") of 50. Tr. at 256. Dr.

7

Smith later completed a Medical Assessment of Ability to Sustain Work-Related Activities report in 2012. *See id*. at 386-87.

- <u>Dr. Maler (August 2, 2011)</u>: Dr. Maler, a state-agency psychology consultant that did not examine Plaintiff, completed a Mental Residual Functioning Assessment of Plaintiff. *See id*. at 258-75. While Dr. Maler left no remarks as to the seven categories in which he noted that Plaintiff's work-related functions were "moderately limited," he did conclude that "Claimant [is] able to understand, remember, and carry out only simple instructions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id*. at 278.

- <u>Dr. Kazia Luszczynska (November 7, 2012)</u>: Dr. Luszczynska, a psychiatrist at Metrocare who treated Plaintiff, diagnosed Plaintiff with "bipolar II disorder, alcohol abuse, cocaine abuse, cannabis abuse" and assigned a GAF of 45. *Id*. at 288.

- <u>Dr. Gregory Graves (May 27, 2014)</u>: Dr. Graves, a second psychiatrist at Metrocare who treated Plaintiff, concurred with Dr. Luszczynska's diagnosis and GAF score. *See id*. at 708-10. He then later issued a report in 2015, with a GAF score of 40.

On review, the ALJ found that Plaintiff had the RFC to "sustain work at all exertional levels." *Id*. at 13. The ALJ further noted that:

> [d]ue to psychological based factors claimant has some limitations but is able to understand, remember, and carry out only simple instructions. The claimaint's attention and concentration issues limit his ability to stay on task for up to 30 minutes and then he would be of task for five minutes. The claimant is able to interact adequately with co-workers and supervisors, but should avoid work around the public. He is able to respond appropriately to changes in a routine work setting.

*Id.* at 13.

In his narrative, the ALJ noted that the "record contains no evidence of mental health treatment from November 2008 through September 2011" and that, if "the claimant's symptoms were not severe enough to motivate him seeking treatment, it becomes more difficult to believe his assertion that his symptoms were disabling." *Id.* at 14. The ALJ notes that "claimant does not always take his medications prescribed, which might contribute to his increased symptomalogy." *Id.*

As to the medical reports, the ALJ referenced Dr. Luszczynska's report by noting that "[the] claimant has been assigned a Global Assessment of Function score[] (GAF) of 45" and that "the report concluded that the claimant's ability to maintain attention for extended period; accept criticism from supervisors; get along with coworkers; and respond to changes in the work environment and stress [were] substantially compromised." *Id.* at 15-16. But the ALJ noted that the "alcohol abuse, cocaine abuse, and cannabis abuse ... likely contributed to/and or exacerbated his symptoms [of] bipolar and depressive symptoms." *Id.* at 15.

The ALJ then referred to Dr. Smith's report, in which Plaintiff "was diagnosed with major depressive disorder and assigned a GAF score of 50, which generally

denotes severe symptoms." *Id.* at 15. The ALJ notes that the report concluded that

> claimant had some difficulty with working memory and being able to hold information in his mind for task completion ... [but that] claimant was able to make performance adjustments 70% of the time; maintain attention 50% of the time; understand and carry out simple job instructions 90% of the time; and behave in an emotionally stable manner 60% o the time with work with limited public contact.

*Id.* But the ALJ asserted that

> Dr. Smith's assessment was partially due to the claimant's endorsement of the psychosocial stressors of unemployment and inadequate finances. It is further noted that the claimant was not receiving mental health treatment when the assessment was completed and actively abusing various substances, which likely contributed to and/or exacerbated his symptoms as well.

*Id.* (internal citations omitted).

As to the weight the ALJ gave the medical reports, he stated that Dr. Luszczynska's medical assessment "ha[d] been considered" and that the ALJ gave the report "some weight in limiting the claimant to simple work with limited public interaction" but that Plaintiff's life indicated that he had good social relationships, shopped in stores, attended church, and used public transport. *Id.* at 16.

As to Dr. Smith, the ALJ noted that he had "considered" Dr. Smith's medical assessment but, since "the claimant's sporadic mental health treatment [did] not demonstrate major concentration impairment or emotional instability," and since "the claimant was not receiving mental health treatment when the assessment was performed and abusing alcohol and cocaine at the time," Dr. Smith's assessment was "given guarded weight." *Id.*

10

As to Dr. Maler, the ALJ notes that "the residual functional capacity assessment reached by the physicians appointed by the State Disability Determination Services also supported a finding of 'not disabled'" but that, since he was a non-examining physician, his "opinion[] do[es] not ... deserve as much weight" as the treating physicians, whose "opinions do deserve some weight." *Id*. at 17.

In finding that the claimant has a FCR to sustain work at all exertional levels, the ALJ did not adopt the medical opinions of the examining doctors and appears to have relied on the MRFCA, despite the ALJ's assertion that he would not base he determination on non-examining physician's reports. While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's impairments on his ability to perform work-related activities. *See Ripley*, 67 F.3d at 557-58. Rather, at that point, the ALJ was required to obtain an expert medical opinion about the types of work tasks that Plaintiff could still perform given his impairments. *See id.* at 557.

As the Fifth Circuit has explained, "[i]n *Ripley*, we held that an ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009).

Therefore, the ALJ erred in reaching his conclusion that Plaintiff could sustain work at all exertional levels because the record lacks substantial evidence to support

his findings concerning the effect of Plaintiff's mental condition on his work-related abilities. *See Nesbitt v. Colvin*, No. 3:12-cv-98-BN, 2013 WL 5299261, at *4 (N.D. Tex. Sept. 20, 2013); *Newsome v. Barnhart*, No. 3:03-cv-3030-D, 2004 WL 3312833, at *3 (N.D. Tex. Oct. 8, 2004); *Newman v. Astrue*, No. 3:11-cv-2033-B-BK [Dkt. No. 33] (N.D. Tex. July 16, 2012), *rec. adopted*, 2012 WL 3104648, at *1 (N.D. Tex. July 13, 2012).

But reversal is only warranted if the claimant shows that he was prejudiced by the ALJ's error. Plaintiff argues that he was harmed because the ALJ appears to have excluded all four favorable opinions from examining doctors, the adoption of which would likely have resulted in a decision that he was disabled, in favor of an ambiguous MRFCA – that the ALJ himself claimed not to give weight to – as well as the ALJ's own "layman's interpretation of pshyciatric notes and medical records." Dkt. No. 23 at 2. Because prejudice can be established by showing that adherence to a ruling might have led to a different decision, Plaintiff here has shown evidence of prejudice. *See Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Newton*, 209 F.3d at 458; *Ripley*, 67 F.3d at 557).

Because Plaintiff was prejudiced when the ALJ independently decided the limiting effects of Plaintiff's disorder without the support of a medical opinion, the Court should reverse and remand for further proceedings as required here.

**Recommendation**

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

---

[1] By recommending a remand for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

13